FOR PUBLICATION

```
IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
        DIVISION OF ST. THOMAS AND ST. JOHN
                APPELLATE DIVISION
```

LEGISLATURE OF THE VIRGIN ISLANDS, )
                                    )
            Appellant,              )   D.C. Civ. App. No. 2007-25
                                    )   re: Super. Ct. Civ. No. 394/2006
      v.                            )
                                    )
JOHN P. DeJONGH,[1] GOVERNOR OF THE )
VIRGIN ISLANDS,                     )
                                    )
            Appellee.               )
_____)

On Appeal from the Superior Court of the Virgin Islands
Superior Court Judge: The Honorable Leon A. Kendall
            To be considered: June 19, 2009
                 Filed: August 7, 2009

BEFORE: **CURTIS V. GÓMEZ**, Chief Judge of the District Court of the
Virgin Islands; **RAYMOND FINCH**, Judge of the District Court of the
Virgin Islands; and **DARRYL D. DONOHUE**, Judge of the Superior
Court, Division of St. Croix, sitting by designation.

---

[1] The notice of appeal in this matter named Charles W.
Turnbull ("Turnbull"), former Governor of the Virgin Islands, as
the appellee in this matter. However, on January 1, 2007, Jogn
P. DeJongh ("DeJongh") succeeded Turnbull as Governor of the
Virgin Islands. As such, DeJongh is automatically substituted
for Turnbull the appellee in this matter. *See* Fed. R. Civ. P.
25(d) ("An action does not abate when a public officer who is a
party in an official capacity . . . ceases to hold office while
the action is pending. The officer's successor is automatically
substituted as a party."); *see also* Super. Ct. R. 7 ("The
practice and procedure in the Superior Court shall be governed by
the Rules of the Superior Court and, to the extent not
inconsistent therewith, by . . . the Federal Rules of Civil
Procedure . . . .").

**ATTORNEYS:**

**Douglas A. Brady, Esq.**
St. Croix, U.S.V.I.
   *For the Appellant,*

**Vincent F. Frazer, Esq.**
St. Thomas, U.S.V.I.
   *For the Appellee.*

---

| MEMORANDUM OPINION |
|---|

PER CURIAM,

The Legislature of the Virgin Islands, (the "Legislature")
appeals from a January 19, 2007, judgment of the Superior Court
of the Virgin Islands, Division of St. Thomas and St. John (the
"Superior Court") granting summary judgment in favor of Charles
W. Turnbull, former Governor fo the Virgin Islands (the
"Governor," or "Governor Turnbull") on his complaint against the
Legislature.  For the reasons given below, we will reverse the
January 19, 2007, Judgment.

## I.   FACTS

In 1984, Congress amended the Revised Organic Act of the
Virgin Islands, 48 U.S.C. § 1541, *et seq.*, (the "ROA"), which
functions as the constitution of the U.S. Virgin Islands.
Section 21(a) of the ROA ("Section 21(a)"), as amended, gives the

Legislature of the Virgin Islands the authority to establish a
local appellate court in the territory. *See* 48 U.S.C. § 1611.[2]

On September 30, 2004, the Legislature passed Bill No.
25-0213 to establish the first local appellate court in the
territory -- the Supreme Court of the Virgin Islands (the
"Supreme Court"). Then Governor Charles W. Turnbull (the
"Governor," or "Governor Turnbull") approved the bill on October
29, 2004, as Act No. 6687. The first line of Act 6687 states
that its purpose is "[t]o amend title 4, Virgin Islands Code to
establish the Supreme Court of the Virgin Islands and . . . for
other purposes."[3] Specifically, Act 6687 provided:

> Title 4 Virgin Islands Code is amended by adding
> Chapter 2 to read as follows:
>
> . . .
>
> The Supreme Court of the Virgin Islands shall
> hold regular sessions in Charlotte Amalie, St.
> Thomas, commencing at such times and continuing

---

[2] Section 21(a) provides that "[t]he judicial power of the
Virgin Islands shall be vested in a court of record designated
the "District Court of the Virgin Islands" established by
Congress, and in such appellate court and lower local courts as
may have been or may hereafter be established by local law." 48
U.S.C. § 1611.

[3] Act 6687 states: "The Supreme Court of the Virgin Islands
is established pursuant to section 21(a) of the Revised Organic
Act of the Virgin Islands, as amended, as the highest court of
the Virgin Islands and in it shall be reposed the supreme
judicial power of the Territory. . . ." Act 6687, § 21; V.I. CODE
ANN. tit. 4, § 21.

> for such periods as the Court from time to time directs.

Act No. 6687, § 21(b)(2); 4 V.I.C. § 21(b)(2) (2004).

In February, 2005, the Legislature passed Bill No. 26-0003. Section 61 of Bill No. 26-0003 sought to amend Act 6687, codified at title 4, section 21(b)(2) of the Virgin Islands Code, to provide that the Supreme Court would hold regular sessions on St. Croix instead of St. Thomas. The Governor vetoed section 61 of Bill No. 26-0003. The Legislature overrode the veto, enacting the bill[4] as Act No. 6730, thereby requiring the Supreme Court to hold regular sessions on St. Croix. *See* 4 V.I.C. § 21(b)(2).[5]

On September 18, 2005, the Legislature passed Bill No. 26-0083. Section 2 of Bill No. 26-0083 stated the following:

> The Virgin Islands Public Finance Authority shall make available, forthwith, to the Superior Court of the Virgin Islands the sum of 5.75 million dollars to construct and establish the Virgin Islands Supreme Court on St. Croix.

---

[4] Section 9 of the Revised Organic Act explains that if the Governor vetoes a bill, the legislature may reconsider the bill upon motion by a legislator and "[i]f, after such reconsideration, two-thirds of all the members of the legislature pass the bill, it shall be a law."

[5] Title 4, section 21 of the Virgin Islands Code, as amended by Act No. 6730, states: "The Supreme Court shall hold regular sessions on the island of St. Croix, commencing at such times and continuing for such periods as the Court from time to time directs." 4 V.I.C. § 21(b)(2) (2005).

The Governor vetoed the bill on December 2, 2005. On December

15, 2005, the Legislature overrode the veto, enacting Bill

26-0083 as Act No. 6816.

On July 19, 2006, the Governor nominated Judges Maria M.

Cabret, Ive A. Swan and Rhys S. Hodge to serve as justices on the

Supreme Court of the Virgin Islands.

On July 28, 2006, the Governor commenced an action for

declaratory relief against the Legislature in the Superior Court.

In his complaint, the Governor alleged that,

> [a]lthough Section 2(b) of the Revised Organic
> Act specifically states that the capitol and seat
> of government of the Virgin Islands shall be
> located in the city of Charlotte Amalie on the
> island of St. Thomas, and Section 8 of the
> Revised Organic Act states only gives the
> Legislature . . . the authority to enact laws
> that are consistent with the Revised Organic Act,
> Defendant has chosen to disregard these
> provisions of the Revised Organic Act and has
> enacted legislation relocating the Supreme Court
> of the Virgin Islands from St. Thomas to St.
> Croix and appropriated funds for the construction
> and establishment of the Supreme Court of the
> Virgin Islands on the island of St. Croix.

(Compl. 1-2, ¶ 2, *Turnbull v. Legislature,* Super. Ct. Civ. No.

394/2006, Jul. 28, 2006.) The Governor sought the following

declarations from the court. First, "that the Revised Organic

Act does not vest [the Legislature] with any authority to

relocate any branch of [the] Government of the Virgin Islands

from the city of Charlotte Amalie in St. Thomas to the island of

St. Croix." (*Id.* at 5, ¶ 1.)   Second, "that Act No. 6730 and Act No. 6816 violate Sections 8 and 2(b) of the Revised Organic Act and are, therefore, null and void." (*Id.* at 5, ¶ 2.)   Third, "that consistent with the Revised Organic Act the regular sessions of the Supreme Court of the Virgin Islands shall be held in St. Thomas and the Supreme Court shall be established and constructed in the city of Charlotte Amalie in St. Thomas." (*Id.* at 5, ¶ 3.)

On October 10, 2006, the Legislature filed a motion to dismiss the Governor's complaint.   The Legislature argued that no case or controversy existed between the parties, and that the Governor lacked standing to sue.   Additionally, the Legislature asserted that the case involved a non-justiciable political question.   Finally, the Legislature claimed that it was entitled to absolute immunity.

On October 24, 2006, the Governor called the Legislature into a special session, in which he requested that the Legislature consider his nominees for the Supreme Court.[6]   On

---

[6] Section 7 of the ROA provides:

> The Governor may call special sessions of the legislature at any time when in his opinion the public interest may require it. No legislation shall be considered at any special session other than that specified in the call therefor or in any special message by the Governor to the legislature while in such session.

October 27, 2006, the special session of the Legislature convened

and confirmed the three nominees as justices of the Supreme

Court.

Also on October 27, 2006, the Legislature passed Bill No.

26-0338 which, in sum, provides that because the Public Finance

Authority did not have $5,750,000 available,

> [t]here is appropriated from the General Fund in
> the fiscal year ending September 30, 2007, the
> sum of $5,750,000, to the Superior Court of the
> Virgin Islands for the establishment and
> construction of the Supreme Court of the Virgin
> Islands on the island of St. Croix. The sum
> remains available until expended.

Bill No. 26-0338.

In an order dated November 13, 2006, the Superior Court

denied the Legislature's motion to dismiss. The court found that

the case involved a justiciable case or controversy, and that the

Governor had standing to sue. The court further found that the

Legislature was the proper defendant, and was not entitled to

immunity.

On November 17, 2006, the Governor moved for summary

judgment on his claims against the Legislature. He argued that

the Supreme Court was part of the "[t]he capital and seat of

government" and as such, was required to be located in Charlotte

Amalie, St. Thomas pursuant to Section 2(b) of the ROA.[7]  In the

Governor's view, Section 61 of Act No. 6730 and Section 2 of Act

No. 6816 violated the ROA by requiring the Supreme Court to hold

regular sessions on St. Croix and providing funds for the

construction of te Supreme Court on St. Croix.  The Governor also

argued that the Legislature lacked the authority under Section 8

of the ROA[8] to enact Section 61 of Act No. 6730 and Section 2 of

Act No. 6816.

On November 22, 2006, the Governor approved Bill No. 26-0338

as Act No. 6900.  However, the Governor noted that he only did so

because he did not intend to impede the establishment of the

Supreme Court. (Letter from Charles E. Turnbull, Governor of the

Virgin Islands, to Lorraine L. Berry, President of the

Legislature 1, Nov. 22, 2006.)

On November 29, 2006, the Legislature filed a motion to

vacate, for reconsideration of, or to amend the November 13,

2006, order denying the motion to dismiss.

---

[7]  Section 2(b) of the ROA provides that "[t]he capital and
seat of government of the Virgin Islands shall be located at the
city of Charlotte Amalie, in the island of Saint Thomas."

[8]  Section 8(a) of the ROA states that "[t]he legislative
authority and power of the Virgin Islands shall extend to all
rightful subjects of legislation not inconsistent with this
chapter or the laws of the United States made applicable to the
Virgin Islands . . . ."

A hearing on all pending motions was conducted on December 13, 2006. On January 19, 2007, the Superior Court denied the Legislature's motion to vacate, for reconsideration of, or to amend the November 13, 2006, order denying the motion to dismiss. It also granted the Governor's motion for summary judgment. The court agreed with the Governor that the laws in question violated the ROA's requirement that the capitol and seat of government be located on St. Thomas. Accordingly, it entered a judgment declaring that "Section 61 of Act No. 6730 and Section 2 of [Act No.] 6816 are hereby declared null and void[.]" (Judgment 1, Jan. 19, 2007.)

On January 25, 2007, the Legislature timely filed its notice of appeal from the January 19, 2007, judgment. This appeal raised the following issues: (1) whether the Superior Court erred in failing to dismiss this matter on grounds that no case or controversy existed between the parties; (2) whether the Superior Court erred failing to dismiss the matter on grounds that it was a non-justiciable political question; (3) whether the Superior Court erred in failing to dismiss the action on grounds that the Legislature was entitled to immunity; and (4) whether the Superior Court erred in declaring that Section 61 of Act No. 6730 and Section 2 of Act No. 6816 violated Sections 2(b) and 8(a) of the Revised Organic Act.

## II.  JURISDICTION & STANDARD OF REVIEW

This Court has jurisdiction over appeals of final judgments
and orders of the Superior Court filed before January 29, 2007,
the date on which the Supreme Court of the Virgin Islands was
certified as ready to assume such jurisdiction. *See* Revised
Organic Act of 1954 23A, 48 U.S.C. § 1613a;[9] Act No. 6687 § 4
(October 29, 2004); *see also Joseph v. People of the V.I.*,
Criminal No. 05-13, 2008 WL 5663569 (D.C. App. Div. 2007)
(explaining that this Court retained its appellate jurisdiction
through the date of the certification of the Supreme Court of the
Virgin Islands).

The Superior Court's findings of fact are reviewed for clear
error, and conclusions of law are subject to plenary review.
*Saludes v. Ramos*, 744 F.2d 992 (3d Cir. 1984); *Poleon v. Gov't of
the V.I.*, 184 F. Supp. 2d 428 (D.V.I. App. Div. 2002).  We review
*de novo* the Superior Court's denial of the Legislature's motion
to dismiss. *See Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554
F.3d 342, 346 (3d Cir. 2009).  Our review of issues of standing
is plenary. *See Pennsylvania Family Institute, Inc. v. Black* 489

---

[9]  The complete Revised Organic Act of 1954 is found at 48
U.S.C. §§ 1541-1645 (1995 & Supp. 2000), *reprinted in* V.I.
CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S.
Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit.
1).

F.3d 156, 165 n.8 (3d Cir. 2007); *Goode v. City of Philadelphia*,

539 F.3d 311, 316 (3d Cir. 2008).

## IV. **ANALYSIS**

### A. Denial of Motion to Dismiss

The Legislature asserts several reasons why, in its view,

the Superior Court erred in denying its motion to dismiss. We

address each in turn.

#### 1. Standing

The Legislature argues that no justiciable case or

controversy exists here because the Governor has neither been

injured, nor legitimately threatened with injury, and, therefore,

that the Governor's suit suffers from defects of standing.

Article III, section 2 of the United States Constitution

restricts "judicial power" to the resolution of "Cases" and

"Controversies." *See Sprint Commc'ns Co. v. APCC Servs., Inc.*,

--- U.S. ---, 128 S.Ct. 2531, 2535, 171 L.Ed.2d 424 (2008).

"That case-or-controversy requirement is satisfied only where a

plaintiff has standing." *Id*. In addition to being a

constitutional inquiry, standing is also subject to certain

prudential limitations that reflect the need for judicial

restraint.[10] *See, e.g., Joint Stock Soc'y v. UDV N. Am., Inc.,*

266 F.3d 164, 179 (3d Cir. 2001) ("The requirements of prudential

standing serve to avoid deciding questions of broad social import

where no individual rights would be vindicated and to limit

access to the federal courts to those litigants best suited to

assert a particular claim.").

   To establish Article III standing, a plaintiff must allege:

> (1) an injury in fact (i.e., a "concrete and
> particularized" invasion of a "legally protected
> interest"); (2) causation (i.e., a "fairly . . .
> trace[able]" connection between the alleged
> injury in fact and the alleged conduct of the
> defendant); and (3) redressability (i.e., it is
> "likely" and not "merely speculative" that the
> plaintiff's injury will be remedied by the relief
> plaintiff seeks in bringing suit).

*Sprint Commc'ns Co.*, 128 S.Ct. at 2535 (quoting *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119

L.Ed.2d 351 (1992) (further quotation omitted)).  These are

---

   [10]  The Third Circuit has articulated the test for assessing
whether a party satisfies prudential standing as follows:

> [Prudential limits] require that (1) a litigant
> assert his [or her] own legal interests rather
> than those of third parties, (2) courts refrain
> from adjudicating abstract questions of wide
> public significance which amount to generalized
> grievances, and (3) a litigant demonstrate that
> her interests are arguably within the zone of
> interests intended to be protected by the
> statute, rule or constitutional provision on
> which the claim is based.

*Davis v. Phila. Hous. Auth.*, 121 F.3d 92, 96 (3d Cir.1997).

"irreducible constitutional minimum" requirements. *Lujan v. Defenders of Wildlife*, 504 U.S. at 560-61.

Article III standing "requires more than an abstract legal dispute." *Donelon v. Louisiana Div. of Admin. Law ex rel. Wise*, 522 F.3d 564, 566 (5th Cir. 2008). "[A] plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized to him." *Raines v. Boyd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). An injury to the "right possessed by every citizen, to require that the [g]overnment be administered according to law" is insufficient to support a claim of standing. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 483-83, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (quotation omitted). Indeed, it is axiomatic that standing cannot be based on "the generalized interest of all citizens in constitutional governance." *Schlesinger v. Reservists to Stop the War*, 418 U.S. 208, 227-28, 94 S.Ct. 2925, 2935, 41 L.Ed.2d 706 (1974).

Where, as here, the plaintiff seeks a declaratory judgment, he must possess Article III standing, "but need not have suffered 'the full harm expected.'" *Khodara Environmental, Inc. v. Blakey*, 376 F.3d 187 (3d Cir. 2004) (quoting *St. Thomas-St. John Hotel & Tourism Assoc., Inc. v. Gov't of the V.I.*, 218 F.3d 232, 240 (3d

Cir. 2000)). A plaintiff in a declaratory judgment action "has

Article III standing if 'there is a substantial controversy,

between parties having adverse legal interests, of sufficient

immediacy and reality to warrant the issuance of a declaratory

judgment.'" *Id.* (quoting *St. Thomas-St. John Hotel & Tourism

Assoc., Inc.*, 218 F.3d at 240). Furthermore, the Supreme Court

of the United States has cautioned that the standing inquiry is

"especially rigorous" in cases like this one where "reaching the

merits of the dispute would force us to decide whether an action

taken by one of the other two branches of the Federal Government

was unconstitutional." *Raines*, 521 U.S. at 819-20.

In his amended complaint[11] (the "Complaint") in this matter,

the Governor alleges[12] that he "is required by the Organic Act to

see that the laws applicable to the Virgin Islands are faithfully

---

[11]   The Legislature argues that the original complaint, not
the amended complaint, is the relevant document for standing
purposes. That argument, however, lacks merit. *See, e.g., County
of Riverside v. McLaughlin*, 500 U.S. 44, 51, 111 S.Ct. 1661,
1667, 114 L.Ed.2d 49 (1991) (undertaking the standing inquiry as
of "the time the second amended complaint was filed").

[12]   The plaintiff, as the party seeking to invoke the court's
jurisdiction, bears the burden of establishing standing. *Common
Cause of Pennsylvania*, 558 F.3d at 257. "For the purposes of
determining standing, the court must accept as true all material
allegations set forth in plaintiffs' complaint and must construe
those facts in favor of the plaintiffs." *Mariana v. Fisher*, 338
F.3d 189, 205 (3d Cir. 2003) (citation omitted); *see also Storino
v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir.
2003) (*citing Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197,
45 L.Ed.2d 343 (1975)).

executed." (Am. Compl. 4, ¶ 18, Nov. 2, 2006.). He correctly

points out that, pursuant to 48 U.S.C. § 1591 ("Section 1591"),

the Governor "shall be responsible for the faithful execution of

the laws of the Virgin Islands and the laws of the United States

applicable in the Virgin Islands." The Governor alleges that,

"[b]y passing legislation inconsistent with the Revised Organic

Act, the Legislature has infringed upon the Governor's authority

and duty to enforce both the provisions of the Revised Organic

Act . . ., as amended, and the laws passed by Legislature." (Am.

Compl. 4, ¶ 20, Nov. 2, 2006.) In essence, the Governor's

claimed injury is his desire not to violate his duties of his

office under Section 1591. The Superior Court, without

explanation, found such injury to be sufficient to confer

standing on the Governor to pursue the instant action. We

disagree.

The Supreme Court of the United States has held that state

officials lack standing to challenge the constitutionality of

state statutes when they are not personally adversely affected by

the statutes, and their interest in the litigation is official,

rather than personal. *See Columbus & Greenville Ry. v. Miller,*

283 U.S. 96, 99-100, 51 S.Ct. 392, 393-394, 75 L.Ed. 861 (1931);

*Braxton County Ct. v. West Virginia,* 208 U.S. 192, 197-98, 28

S.Ct. 275, 276, 52 L.Ed. 450 (1908); *Smith v. Indiana,* 191 U.S.

138, 148-49, 24 S.Ct. 51, 52, 48 L.Ed.2d 125 (1903). For

instance, in *Smith v. Indiana*, 191 U.S. 138, 24 S.Ct. 51, 52, 48

L.Ed.2d 125 (1903), a county auditor brought an action against

the state of Indiana in state court, alleging that a state

property tax statute was unconstitutional. The Supreme Court

dismissed the appeal, reasoning that

> the jurisdiction of this court . . . can only be
> invoked by a party having a personal interest in
> the litigation. It follows that he cannot sue out
> a writ of error in behalf of third persons. . .
> . It is evident that the auditor had no personal
> interest in the litigation. He had certain
> duties as a public officer to perform. The
> performance of those duties was of no personal
> benefit to him. Their nonperformance was equally
> so. He neither gained nor lost anything by
> invoking the advice of the supreme court [of
> Indiana] as to the proper action he should take.
> He was testing the constitutionality of the law
> purely in the interest of third persons, viz.,
> the taxpayers . . . . We think the interest of
> an appellant in this court should be a personal,
> and not an official, interest . . . .

*Id.* at 148-49.

However, in *Board of Education v. Allen*, 392 U.S. 236, 88

S.Ct. 1923, 1925, 20 L.Ed.2d 1060 (1967), the Supreme Court held

that members of a school board had standing to challenge a state

law as unconstitutional. The law in question required that the

board provide free textbooks to children in both public and

parochial schools. Standing had been conceded in *Allen*, and the

Supreme Court disposed of the issue in a brief footnote, stating:

> Appellees do not challenge the standing of
> appellants to press their claim in this Court.
> Appellants have taken an oath to support the
> United States Constitution. Believing s 701 to
> be unconstitutional, they are in the position of
> having to choose between violating their oath and
> taking a step-refusal to comply with s 701-that
> would be likely to bring their expulsion from
> office and also a reduction in state funds for
> their school districts. There can be no doubt
> that appellants thus have a 'personal stake in
> the outcome' of this litigation. *Baker v. Carr*,
> 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d
> 663 (1962).

*Id.* at 241 n.5. The above-quoted footnote comprised the extent
of the Court's discussion of the standing issue.

The United States Court of Appeals for the Second Circuit
has interpreted *Allen* as setting forth a broad rule that public
officials, in their official capacities, have standing to bring
suits challenging the constitutionality of state laws based on
the "conflict . . . these officials must face between [their]
sworn duty to uphold the Constitution of the United States and
[their] responsibility for administering . . . allegedly
unconstitutional [state laws]." *City of New York v. Richardson*,
473 F.2d 923, 929 (2d Cir. 1973); *see also Aguayo v. Richardson*,
473 F.2d 1090, 1100-01 (2d Cir. 1973) (holding that the
commissioner of social services for New York City had standing to
raise statutory and constitutional challenges to experimental
work projects because "[l]ike the school board members in

[*Allen*], he is faced with what he deems a conflict between his
oath to support the United States Constitution and his duty under
state law to carry out the New York projects"). However, the
United States Courts of Appeals for the Fifth and Ninth Circuits,
as well as other courts, have declined to read *Allen* so broadly.
*See, e.g., City of South Lake Tahoe v. California Tahoe Regional
Planning Agency,* 625 F.2d 231, 237 (9th Cir. 1980) (holding that
*Allen* does not stand for the proposition that a public official's
desire not to violate his oath of office is sufficient to confer
standing); *Finch v. Mississippi State Medical Ass'n, Inc.,* 585
F.2d 765, 773 (5th Cir. 1978) ("With due respect, we believe that
our colleagues on the Second Circuit have stated the rule derived
from *Allen* too widely . . . ."); *Athanson v. Grasso,* 411 F. Supp.
1153, 1157 (D. Conn. 1976) ("[I]t would be a serious mistake to
assume that *Allen* stands for the broad proposition that all
public officials have standing to challenge the constitutionality
of laws with which they do not agree."); *Baxley v. Rutland,* 409
F. Supp. 1249, 1255-57 (M.D. Ala. 1976) (holding that *Allen*
requires that a public official have a personal stake in the

matter beyond that represented by his official responsibility to uphold the constitution).[13]

In *Finch v. Mississippi State Medical Ass'n, Inc.*, 585 F.2d 765, 773 (5th Cir. 1978), the governor of Mississippi sought a judgment declaring that a state law outlining the method of selecting the state's Board of Health violated both the state and federal constitution.  The district court dismissed the governor's complaint for lack of standing.  The governor appealed, arguing that he had suffered injury in fact under *Allen* based on the contention that "he must violate his oath of office to uphold the laws of Mississippi if he ignores the statute and he must violate his oath to uphold the Constitutions of Mississippi and the United States if he obeys it; in his opinion the statute violates both constitutions." *Id.* at 773.  The Fifth Circuit rejected the governor's standing argument.  The court explained that the plaintiffs in *Allen* did not have standing to challenge the constitutionality of a state law merely by virtue of their oath of office to uphold the constitution. *See id.* at 773-74.  Rather, the court emphasized that the *Allen* plaintiffs specifically alleged that they were likely to be expelled from office and that their school districts were likely to lose state

---

[13]    We are unaware of any case in which the United States Court of Appeals for the Third Circuit has interpreted footnote five of *Allen*.

funding if they refused to comply with the state law they
believed to be unconstitutional. *See id.*

The Fifth Circuit in *Finch* found that the governor of
Mississippi, as an elected official, was "in no danger of
expulsion from office as a result of any action that he alone
believes may have violated his oath." *Id.* at 774. Nor did the
governor allege that his office was in any danger of losing funds
if the governor refused to comply with the state law in question.
*See id.* Thus, the court held that the governor had "no standing
by virtue of his oath of office because, without more, this alone
is not a sufficient personal stake." *Id.* It reasoned that

> [t]he mental disposition of the Governor is all
> that gives him cause to complain; were he to
> change his mind tomorrow and decide, rightly or
> wrongly, that the state statute is valid, he
> would no longer have any interest in the case.
> He has no personal stake in the outcome of this
> case; he will not be affected favorably by a
> decision that the statute is unconstitutional nor
> adversely by a decision that it is valid.

*Id.*

In *City of South Lake Tahoe v. California Tahoe Regional
Planning Agency*, 625 F.2d 231 (9th Cir. 1980), the Ninth Circuit
was faced with a violation of oath argument based on the *Allen*
footnote. In that case, the mayor and members of the city
council of the City of Lake Tahoe brought an action claiming that
certain land use regulations and transportation plans violated

the constitution. The defendants (a political subdivision

charged with enacting the regulations in question and four of its

members) moved to dismiss on standing and abstention grounds.

The district court dismissed the complaint on abstention grounds

and did not reach the standing issue.

On appeal, the Ninth Circuit reversed, holding that the

complaint should have been dismissed for lack of standing. The

plaintiffs claimed to have standing because they were required by

law to enforce the state regulations, "yet by voting to enforce

these regulations would violate their oaths of office to uphold

the U.S. Constitution and expose themselves to civil liability

. . . for enforcing an unconstitutional law." *Id.* at 233. The

appellate court acknowledged that "[i]t may be argued that a

public official charged with the enforcement of an allegedly

unconstitutional state law does have a greater and more specific

stake in the law's validity than an ordinary citizen." *Id.* at

237. Nonetheless, the court explained that

> the source of the public official's complaint .
> . . is just abstract outrage at the enactment of
> an unconstitutional law. Apart from the highly
> speculative potential exposure to civil liability
> . . ., the councilmembers will lose nothing by
> enforcing the . . . ordinances save an abstract
> measure of constitutional principle. No
> consequences, save those of conscience
> self-imposed by the councilmembers' personal
> beliefs, flow from the violation of the oath in
> performance of a statutory duty.

*Id.* Accordingly, because the plaintiffs did not show any
concrete personal injury resulting from the challenged
regulations, the court held that the plaintiffs' injuries were
"official" rather than "personal," and therefore standing was
deficient under the traditional rule announced in *Smith v.
Indiana*, 191 U.S. 138, 24 S.Ct. 51. *See id.* at 738.

In *Athanson v. Grasso*, 411 F. Supp. 1153, 1157 (D. Conn.
1976), the District of Connecticut (sitting as a three-judge
panel) carefully considered the interpretation placed upon *Allen*
by the Second Circuit.[14]  In that case, the mayor and city
council of Hartford, Connecticut challenged the constitutionality
of a state law providing for a flat, per-pupil payment to assist
in bearing the costs of education.  In the plaintiffs' view, the
law violated the equal protection clause of the Fourteenth
Amendment because it resulted in heavier tax burdens for larger
towns.  The defendants moved to dismiss for lack of standing.  In
response, the plaintiffs argued that they had standing based on
the dilemma they faced between violating their oaths to uphold
the constitution and their responsibility for administering a law
they believed to be unconstitutional.  The plaintiffs relied on
the Second Circuit's opinions in *City of New York v. Richardson,*

---

[14]  *Athanson* was discussed with approval in *Finch* and cited
in *City of South Lake Tahoe.*

473 F.2d 923 (2d Cir. 1973) and *Aguayo v. Richardson*, 473 F.2d

1090, 1100-01 (2d Cir. 1973}, as support for their position.  The

*Athanson* court noted that it was bound to follow the Second

Circuit's precedent in *City of New York* and *Aguayo*, but engaged

in no further discussion of those cases.

Instead, the *Athanson* court reasoned that, unlike the *Allen*

plaintiffs, the mayor and city council members were not likely to

be removed from office if they refused to comply with the

challenged law. *See id.* at 1158.  It further distinguished *Allen*

on grounds that the law at issue in that case required the

plaintiffs to do something that could be regarded as a violation

of their oaths of office. *See id.* at 1158-59.  The court

explained that the law in *Allen* required the plaintiffs to act in

a way that could reasonably be viewed as an establishment of

religion specifically forbidden by the First Amendment. *Id.* at

1159.  In contrast, the law challenged in *Athanson* did not

require the plaintiffs to do anything that could be regarded as a

violation of their oaths of office because it did not require

them to do anything that was specifically forbidden by an express

term of the constitution. *See id.* at 1158-59.  The *Athanson* court

acknowledged that the plaintiffs had an official responsibility

to perform the duties of their offices, for example, by raising

the revenue needed to finance education. *See id.* at 1159.

However, the court explained that

> the constitution imposes no prohibition on
> providing funds for public education apart from
> the establishment clause. And the mere fact that
> the plaintiffs have taken an oath to uphold the
> Constitution cannot confer upon them a Quixotic
> brand of standing to challenge allegedly
> unconstitutional laws wherever they may be found.

*Id.* Thus, notwithstanding the Second Circuit's opinions in *City
of New York* and *Aguayo*, the court in *Athanson* held that the
plaintiffs lacked standing. Thus, the court granted the motion
to dismiss.

Even the Second Circuit has arguably retreated from the
broad view of *Allen* embodied in *City of New York* and *Aguayo*. In
*Board of Education of Mt. Sinai Union Free School District v. New
York State Teachers Retirement System*, 60 F.3d 106 (2d Cir.
1995), the officials of a school district challenged the
constitutionality of a state law requiring school districts to
make certain retirement contributions when they employ teachers
previously retired from service in another public sector. The
district court dismissed the complaint for lack of standing. On
appeal, the Second Circuit affirmed. It reasoned that, though
the burden was on the plaintiffs to plead facts supporting
standing, the complaint in that case did not allege that
compliance with the law in question would require the plaintiffs

to violate their oaths to act constitutionally. *See id.* at 112.

The court further explained that, in contrast to the complaint in

*Allen,* the complaint in *Board of Education of Mt. Sinai Union*

*Free School District* did not allege that either the plaintiffs'

positions or funding for their schools would be jeopardized if

they failed to comply with the challenged law. *See id.*

Ultimately, the court concluded that, "even if we were to assume

that [the] plaintiffs fear that they might violate their

constitutional oaths, they have failed to demonstrate that they

are presented with the dilemma that gave rise to standing in

*Allen*[.]" *Id.*

We are persuaded by the reasoning of *Finch, City of South*

*Lake Tahoe,* and *Athanson,* and agree with those courts that the

*Allen* footnote should not be read too broadly. The plaintiffs in

*Allen* did not have standing by virtue of their duties of office

alone. They also faced real risks of removal from office or

diminution of funds if they refused to comply with the law in

question. Furthermore, the challenged law required the *Allen*

plaintiffs to do something that was directly prohibited by an

express term of the constitution.

The Governor in this case asserts the same type of injury as

the plaintiffs in *Finch, City of South Lake Tahoe,* and *Athanson.*

He claims to be injured by virtue of the dilemma he faces between

his responsibility to faithfully execute the laws applicable to the Virgin Islands, including the ROA, and his duty to enforce laws that he believes violate the ROA. The Governor does not allege that he is likely to be removed from office for failure to comply with Section 61 of Act No. 6730 and Section 2 of Act No. 6816. Unlike the plaintiffs in *Allen* who were appointed by a commissioner, the Governor, as an elected official, is not in any realistic danger of expulsion from office at the hands of the Legislature. There is also no allegation that the Governor's office is likely to lose any funding if he refuses to comply with the laws in question.

Furthermore, the challenged laws do not require the Governor to do anything that could be regarded as a violation of his responsibilities of office. Indeed, Section 61, of Act No. 6730 does not actually require the Governor to do anything at all, but simply requires the Supreme Court to conduct regular sessions in St. Croix. Section 2 of Act No. 6816 also does not require any affirmative action on the part of the Governor. Rather, it merely makes funds available for the construction of the Supreme Court in St. Croix, in much the same way as a bill appropriating funds for any public work, such as a road. Neither of the challenged provisions require the Governor to act in a way that is directly forbidden by an express term of the ROA or any other

law applicable to the Virgin Islands. Rather, like the governor in *Finch*, "[t]he mental disposition of the Governor is all that gives him cause to complaint; were he to change his mind tomorrow and decide . . . that the statute[s] [are] valid, he would no longer have any interest in this case."" *Finch*, 585 F.2d at 774.

The Governor in this case has failed to demonstrate that he faces the type of dilemma found sufficient to confer standing in *Allen*. He has not presented any basis for standing, aside from the mere fact of his desire not to violate the responsibilities of his office. Such a theory "would confer standing on any public official who believes that a statute which he or she is charged with enforcing is unconstitutional." *City of South Lake Tahoe*, 625 F.2d at 237. Indeed, the Governor's theory of standing would permit him to file suit alleging a civil rights violation based on search of a third party's vehicle, which the Governor believed to be illegal. Because the Governor has not shown any concrete, personal, injury resulting from the operation of the challenged laws beyond his belief that they violate the ROA, we find that he lacked standing to bring this action against the Legislature. *See, e.g., Baxley*, 409 F. Supp. at 1257 ("The subjective opinion of the Attorney General without any other personal stake in the outcome is too weak a base to support the

concept of standing and the jurisdictional requirement of a case

or controversy between parties with adversary interests.").

Accordingly, the Superior Court erred in denying the

Legislature's motion to dismiss.[15]

### V.   CONCLUSION

For the foregoing reasons, the Court will reverse the

Superior Court's January 19, 2007, judgment and remand the matter

for further proceedings consistent with this Opinion.   An

appropriate Order follows.


**ENTERED:** August 7, 2009




**Copies (with accompanying Order) to:**

Hon. Curtis V. Gómez
Hon. Raymond L. Finch
Hon. Darryl D. Donohue
Douglas A. Brady, Esq.
Vincent F. Frazer, Esq.
Kim Bonelli
Olga Schneider
Clerk of the Superior Court
Bailey Figler, Esq.

---

[15]   Because we have found that the matter should have been
dismissed for lack of standing, we need not address the remainder
of the arguments raised by the Legislature in this appeal.